299 So.2d 72 (1974)
Reubin O'D. ASKEW, Governor of the State of Florida, et al., Appellants,
v.
Luther M. TAYLOR, Trustee, Appellee.
No. U-63.
District Court of Appeal of Florida, First District.
July 25, 1974.
Rehearing Denied September 9, 1974.
Robert L. Shevin, Atty. Gen., and Arthur C. Canaday, Asst. Atty. Gen., for appellants.
Luther M. Taylor, Ryan, Taylor & Law, North Palm Beach, for appellee.
RAWLS, Chief Judge.
On January 24, 1967, the minutes of the meeting of the Trustees of the Internal Improvement Fund of the State of Florida reflect the following transaction:
"... On December 13, 1966, the Trustees considered application from Lucille deTar Colyer, abutting upland owner, with offer of $1,453.75 per acre, appraised price, for purchase of a tract of submerged land in Lake Worth ... *73 sometimes known as Little Munyon Island, containing 15.114 acres, more or less, within an established bulkhead line in Palm Beach County. Notice of sale was published in the Palm Beach Post, proof of publication filed.
"Letter from the Mayor of the Town of Palm Beach Shores, located nearly two miles south of the proposed sale, reaffirmed opposition, set out in Town Resolution No. 56, to any sale of bottom land in Lake Worth and any dredging of state-owned land to be used as fill.
"In view of the fact that the dredging operation would be largely within the right of way of the intercoastal waterway, and the parcel was in an area where previous dredging activities for navigation and reclamation had substantially destroyed the prime spawning and feeding grounds, the Staff felt that the objection should be overruled and the sale confirmed. The Florida Board of Conservation previously reported on the siltation in Lake Worth."
The Trustees confirmed sale of the advertised parcel to the riparian owner.
The sum of $21,900.00 was duly paid to the State of Florida by the riparian owner for the submerged land. The minutes of the Trustees' meeting held on January 30, 1968, reflected the following:
"... Staff presented for approval a fill permit issued by the Village of North Palm Beach by Resolution No. 328-67 ... to fill the 15.114 acres of submerged land in Lake Worth abutting Little Munyon Island... .
"As required by provisions of the new law, the Village of North Palm Beach secured a biological report on the area to be filled, and the letter dated October 19, 1967, from the marine biologist stated that although the subject area presently has limited value as a nursery and feeding ground, he recommended denial of the fill application, that filling around Little Munyon Island would cover shallow marine soils that support seagrass growth that apparently is limited only by insufficient sunlight, and that the project would not be compatible with local and statewide interest in rehabilitation of Lake Worth.

"Staff reviewed the biological report and in recognition of the fact that the parcel was confirmed for sale to the abutting upland owners on January 24, 1967, and a deed issued on March 13, 1967, which action was based upon the biological report previously prepared, it was the recommendation of the Staff that the dredge and fill permit issued by the Village of North Palm Beach be approved, conditioned upon the applicant securing all material from the adjacent intracoastal waterway and performing the dredging operations in such a manner as to prevent silting along the fringes of the area to be filled." [Emphasis supplied.]
The Trustees overruled the staff's recommendation by unanimously denying the application.
Subsequent efforts to procure administrative relief by the purchaser were to no avail, thus the instant suit was filed by the successor in title seeking equitable relief. The trial judge in an extensive final judgment directed the Trustees to approve the fill permit issued by the Village of North Palm Beach on November 28, 1967. In affirming the final judgment rendered we quote with approval and adopt same as the opinion of this Court the following parts of the able trial judge's opinion, viz:
"Plaintiff's rights are not barred by laches. No prejudice, loss, or legal injury will be suffered by the trustees by the granting of relief at this time. The slight, if any, change in ecological conditions which have taken place cannot impair the legal rights of the plaintiff.
"Insofar as plaintiff seeks a dredge permit, he is entirely without any rights whatever. The statute clearly authorizes *74 the granting of fill permits without the right to dredge. Plaintiff secured from the Village of North Palm Beach only a fill permit. The trustees have no authority to grant a dredge permit. They may approve a dredge permit issued by a city or county, but they are without the authority to grant the original permit.
"Insofar as plaintiff seeks approval of his fill permit, he is clearly within his legal rights. When plaintiff's predecessor in title bought the bottoms and when the trustees took the purchase price, it was clearly intended by all parties that filling would take place out to the then established bulkhead line. It was on this basis that the trustees fixed the prices of the bottoms. It was on this basis that the purchaser paid the price so fixed. Thus, the treasury of the State was benefited by the purchase price fixed by the trustees, consisting of the highest officials of this State.
"Public officers are presumed to do their duty. The Court will, therefore, assume that the then trustees, before executing the deed to plaintiff's predecessor in title, made the findings necessary to make their acts legal.
"The Supreme Court, almost a century ago, held that `common honesty is quite as respectable on the part of the State as in an individual, and hence the state will be honest and not repudiate.' Cheney v. Jones, 14 Fla. 587 (610-611).
"Applying this principle, the Court holds that the State must be honest with the plaintiff and not repudiate its solemn deed.
"If, perchance, the trustees have executed conveyances they should not have executed and divested the State of assets which the public interest now requires the State to own, the State has an adequate remedy. It may exercise the power of eminent domain and re-acquire the assets improvidently sold, thus protecting the integrity of the State and making whole the citizens who would otherwise be defrauded. In approving plaintiff's fill permit, the trustees may require that the filling be accomplished with a minimum of injury to adjacent waters or bottoms, but they may not refuse plaintiff the right to fill.
......
"ADJUDGED AND DECREED as follows:
"1. Plaintiff does not have a legal right to demand a dredge permit from the trustees.
"2. Plaintiff does have a legal right to the approval by the trustees of the fill permit issued to plaintiff by the Village of North Palm Beach on November 28, 1967."
The judgment appealed is affirmed.
JOHNSON and BOYER, JJ., concur.