MELVIN, Judge.
Edward Shablowski is the owner of certain waterfront property located on the Indian River. In 1963 and 1964, Shablowski purchased from the trustees of the Internal Improvement Fund (Trustees) several parcels of submerged land, which were located adjacent to his, above-mentioned, waterfront property. In 1969, Shablowski applied to the Department of Environmental Regulation (DER) for a permit to bulkhead and fill the submerged land and to dredge a shallow access canal from the river to his upland property. Specifically, the project would involve the construction of 600 lineal feet of seawall, which would be in line with and connect to an existing seawall along the adjacent property to the north.[1] The 200 by 400 foot area enclosed by the seawall would then be filled with some 4,000 cubic yards of spoil. The dredging request was for an access channel three feet deep, 80 feet wide and 1,500 feet running from the eastern edge of the property riverward.
Thereafter, in April of 1977, the DER gave Shablowski notice of its intent to deny the permit application. Shablowski then filed a petition for a formal hearing pursuant to Section 120.57, Florida Statutes. Following the hearing, the hearing officer entered his recommended order stating that the application for a permit should be approved. By his recommended order, the hearing officer found that the Indian River in the vicinity of Shablowski’s property had become in the nature of a basin because of the existence of causeways to the north and south, which materially reduced the flushing action of this portion of the river and, *52 thereby, increased the turbidity of the water. He found that the surface drainage from Highway U.S. 1 and in an area of some five square miles adjacent to the highway ran unfiltered into the river at a point near Shablowski’s property. The hearing officer also found that this portion of the Indian River, while in an ecologically stressed condition was not dead. With reference to the 400 by 200 foot fill site, the hearing officer found that the area had an average depth of 1.5 feet and was sparsely covered with patches of Cuban Shoalweed. The significant amount of animal life found on the property in question included blue crabs, silversides, mojarra, needle fish, mullet, sheepshead, leatherjack and snook. Other life samples included polychaetes, amphipods, sphaeromid, isopods, cumaceans, small shrimp, gem clams, paper mussels, gobies, and pipe fish. As to the dredging, the hearing officer found that the hydraulic dredging with the use of silt screens would not have a significant adverse impact on marine biological resources or water quality. The hearing officer found that the proposed bulkhead would increase the possibility of scouring in the area, but that Sha-blowski’s agreed to installation of rip rap along the bulkhead would eliminate the scouring and promote the propagation of marine life. Lastly, the hearing officer found that the granting of the application would:
“. . . result in the loss of approximately two acres of moderately productive bottom land in the Indian River, or approximately 0.1 percent of the total area of the Indian River in the basin between the two causeways.”
He noted, however, that:
“Petitioner generally acknowledges that filling of the area in question will not have a significant effect upon the ecology of the area; however, if others also fill productive bottom lands the cumulative effect could be significant.”
The hearing officer discussed the requirements of Section 253.124, Florida Statutes, and Rule 17-4, FAC, and concluded that Shablowski had satisfied them for the issuance of a permit, except for the adverse effect that filling the two acres of submerged land would have on the conservation of fish, marine and wildlife or other natural resources (the adverse effect being the elimination of this area as a food source, breeding ground and nursery for marine life).
Classifying the adverse effect as minimal and noting that Shablowski had paid taxes on the submerged lands some 15 years, the hearing officer distinguished the instant case from Yonge v. Askew, 293 So.2d 395 (Fla. 1st DCA 1974) and, relying upon Askew v. Taylor, 299 So.2d 72 (Fla. 1st DCA 1974), recommended the granting of both the dredging and filling permits.
Following review of the recommended order, the DER entered its final order finding that: 1) the hearing officer had erred in assuming that the impact of the proposed fill must be measured against the ecology of a given area such as between the two causeways; 2) erred in failing to address whether the fill project was “contrary to the public interest”; 3) erred in not conforming with prior agency practice and orders by failing to find that the cumulative effects caused by the proliferation of such fill projects would have measurable and detrimental effects on water quality and the natural resources of the river, notwithstanding the fact that the instant project, standing alone, would not have a “measurable” effect upon the natural resources of the area; 4) erred in failing to find that the dredging would be in the public interest as required by Section 253.123(3)(a), and Yonge v. Askew, supra; and 5) misapplied the holding in Askew v. Taylor, supra, to the instant case. Accordingly, the Secretary of the DER, by his final order, adopted the findings of fact contained in the recommended order, adopted in part and rejected in part the conclusion of law contained in the recommended order and denied Sha-blowski’s application.
Shablowski subsequently sought review by the Governor and Cabinet, sitting as the trustees, who approved and affirmed the DER’s final order. Shablowski now appeals pursuant to Chapter 120.
*53 In our opinion there are two issues presented by this appeal: 1) Whether Sha-blowski should be allowed to dredge as requested by his application, and 2) whether he should be allowed to bulkhead and fill his property as requested. We perceive that these issues are governed by separate sections of the law and warrant individual discussion.

DREDGING

We conclude that the DER was correct in denying Shablowski’s application to dredge. Applications to dredge from the navigable waters of this state are made pursuant to Section 253.123 Florida Statutes, which provides that applicants to dredge for the construction of navigation channels:
“. . . shall only be undertaken after receipt of a permit from the board of trustees, which permit shall be granted after consideration of a biological or ecological study . . . upon a showing of the public interest which will be served by such works.” [Section 253.123(3)(a) (emphasis supplied)]
In the instant case Shablowski has not asserted that his dredge project will serve the public interest. The dredging was thus properly denied. Yonge v. Askew, supra.

BULKHEADING AND FILLING

As to the remaining issue of the filling of Shablowski’s property, we conclude that the DER erred in denying his application. Applications to fill are governed by Section 253.124, Florida Statutes, which does not contain the stringent language of Section 253.123, that the applicant must demonstrate that the project will serve the public interest. Rather, this section merely requires that a determination that the fill project will not:
“Interfere with the conservation of fish, marine and wildlife or other natural resources, to such an extent as to be contrary to the public interest, and whether the destruction of oyster beds, clam beds, or marine productivity, including, but not limited to, destruction of natural marine habitats, grass flats suitable as nursery or feeding grounds for marine life, including established marine soils suitable for producing plant growth of a type useful as nursery or feeding grounds for marine life, will result therefrom to such an extent as to be contrary to the public interest.” (emphasis supplied)
While it appears self evident, the DER correctly notes that the filling of these two acres will completely eliminate their use as a marine habitat or feeding area. Noting that the adverse impact of Shablowski’s project would, necessarily, be less drastic on the immediate surrounding area and would be diluted with distance and space as one increases the proposed area of impact, the DER claims that there is no basis for the hearing officer’s assumption that the impact of the proposed fill must be measured against the ecology of a given area such as that between the two causeways. The DER points out that the statute does not specify a geographical area against which the impact must be measured and, without suggesting what area would have been properly used, declares that the hearing officer erred in measuring the impact against the entire basin between the two causeways. We cannot agree.
The record in this case indicates that the state and/or its political subdivisions reduced the flow or the flushing action of the Indian River by the construction of causeways on either side of Shablowski’s property. This reduced flushing action coupled with the introduction of storm water runoff from the nearby highway and developed areas led to increased levels of turbidity and bottom silting. These in turn resulted in the impaired ability of this area to serve as a marine habitat and feeding grounds. Our reading of the record reveals that this impaired condition of the water and bottom is substantially uniform throughout the basin between the causeways. Considering the mobility of most of the marine life involved here the bottom line, so to speak, is that the hearing officer selected the most logical geographical area against which to measure the impact of Shablowski’s project.
*54 The statutory language to such an extent as to be contrary to the public interest” presupposes some reduction in the ecological value of the area concerned. Whether it is “to such an extent as to be contrary to the public interest” is a factual question which must be determined on a case by case basis. In the instant case, the hearing officer found, and, indeed, the DER’s own witnesses testified that the ecological and biological effects of Shablow-ski’s fill project would be minimal. Our reading of the record confirms the same, and we consider that such minimal effects when considered against the basin area are not to such an extent as to be contrary to the public interest. Accordingly, we find that the denial of that portion of the application for permit to fill is not supported by competent substantial evidence and is, therefore, an abuse of discretion. McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
The denial of appellant’s application to dredge is AFFIRMED and the denial to fill is REVERSED with directions to grant the fill application.
MASON, ERNEST E., Associate Judge, concurs.
ERVIN, J., concurs in part and dissents in part.

. This submerged land was likewise acquired from the trustees, bulkheaded and filled, circa 1963, and is now operated as a commercial marina.