492 So.2d 735 (1986)
LITTLE MUNYON ISLAND, INC., Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. BG-171.
District Court of Appeal of Florida, First District.
July 25, 1986.
Rehearing Denied September 5, 1986.
*736 Ross A. McVoy of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for appellant.
Julia D. Cobb, Asst. Gen. Counsel, Tallahassee, for appellee.
DAVEY, P. KEVIN, Associate Judge.
Little Munyon Island, Inc. (LMI) appeals from a declaratory statement issued by the Department of Environmental Regulation (DER) pursuant to Section 120.565, Florida Statutes (1983), declaring that LMI would be required to seek a fill permit before placing concrete anchors in Lake Worth.
In August 1983, LMI, owners of a 15-acre tract of submerged land off Little Munyon Island in Lake Worth, filed a permit application with DER for "yacht anchorages within the tract." The application made no mention that submerged concrete anchors would be used. After DER notified LMI of its intent to deny the application, LMI replied by letter that it was "only asking permission to anchor private marine vessels within the private boundaries of its bottomland." Again, no concrete anchors were mentioned. LMI followed this letter with a request for an administrative hearing on its permit application.
Negotiations between LMI and DER ensued and resulted in a letter from DER, describing LMI's project as "a proposed anchorage within privately owned deeded bottomland ... contain[ing] no structural work, dredging, filling or permanent bouyed [sic] mooring facilities" (emphasis supplied), and stating that "[a]t this time, no permit is required for your project by this Department and there are no objections to your proposal." Based on this letter, LMI withdrew its hearing request, but not its application. It informed DER by letter that "[d]uring this Initial Interim Anchorage Start-up we anticipate using Marine Anchors as carried on-board cruising Yachts" (emphasis supplied). LMI did not state that concrete anchors would be used, but only that they had been considered.
DER proceeded to deny the permit application, based on its letter to LMI that "no *737 permit is required for your project." The order went on to say that "[p]etitioner may anchor yachts adjacent to Little Munyon Island pursuant to the Department notice (Exhibit C)." Exhibit C was LMI's letter referring to its anticipated use of "anchors as carried on-board cruising yachts." LMI then sought this declaratory statement as to whether a DER permit would be required for concrete anchors, described in the petition as "heavy anchors which are serviced every six (6) months but which otherwise sit on the bottom of the lake." The petition also sought a declaration that the final order allowed LMI to use the anchors without a permit.
DER issued its declaratory statement finding that use of the type of anchors described in the petition would require a permit. This finding was based upon Florida Statute Section 403.087(1), which requires that a permit be obtained for "any stationary installation which will reasonably be expected to be a source of pollution." "Stationary" is undefined by rule or statute. However, DER determined that, given the design and intended function of the anchors, the fact that they would be removed and inspected every six months did not preclude classifying them as stationary. This declaration further held that the earlier final order did not obviate the permit requirement since, when DER stated previously that no permit would be required, the project had been described to it as one wherein yachts would be moored via on-board killicks.
LMI anchors its appeal with the contention that, since "stationary" is undefined by rule or statute, the ordinary definition applies, which is "fixed in a station, course or mode; standing still: immobile ... not portable." It urges that, since these anchors can be raised for maintenance purposes, they do not fall within this definition. DER, as iterated above, concluded that this limited portability did not preclude a finding that the anchors were "fixed," given their intended function.
Agency determinations with regard to a statute's interpretation and applicability will receive great deference in the absence of clear error or conflict with legislative intent. Sans Souci v. Division of Florida Land Sales and Condominiums, 421 So.2d 623, 626 (Fla. 1st DCA 1982). DER's interpretation of the critical term "stationary" does not have to be the only one, or even the most desirable. It is enough if it is a permissible one and sufficiently expounded by the declaratory statement. Florida Power Corporation v. DER, 431 So.2d 684, 685 (Fla. 1st DCA 1983). We perceive no error in defining as "stationary" an installation which is designed to, and does, remain in one place in the performance of its intended function.
LMI contends that no fill permit can be required for its project. Initially, it argues that the placement of the anchors is not "filling" within the applicable definition, set forth at the time of this petition in Rule 17-4.02(15), Fla. Admin. Code.[1] However, this definition is sufficiently broad, on its face, to include the "deposition" of the instant anchors in the waters off Little Munyon Island.
Secondly, LMI argues that the State is estopped from requiring such a permit by this court's decision in Askew v. Taylor, 299 So.2d 72 (Fla. 1st DCA 1974). In that case, LMI's predecessor in title purchased the same tract of land involved herein. A fill permit issued by local government was later denied by the Trustees of the Internal Improvement Trust Fund. The owner sought equitable relief and the trial court ordered issuance of the permit. This court affirmed, finding that it had been understood at the time of the sale that "filling would take place" and that the state could not now repudiate that understanding. Askew at 74.
*738 However, we are of the view that this case is controlled by the rule of law enunciated in Dept. of Environmental Regulation v. Oyster Bay Estates, Inc., 384 So.2d 891 (Fla. 1st DCA 1980). In that case, this court held that although the State cannot (after selling submerged land to private owners) deny the owners the right to use the lands "in the only way in which private ownership can be of any value," the State, in the exercise of its police power may place reasonable restrictions upon the use of such property in the interest of public health, welfare, morals and safety. Oyster Bay Estates at 894-895.
Therefore, despite the fact that LMI's predecessor in title bought the land with the right to fill it, LMI may be required to seek a permit to do so. It should be noted that the permit has not yet been denied. If DER denies the permit, LMI would have the right to appeal that adverse agency action. The declaratory statement under review is therefore
AFFIRMED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] Filling is therein defined as "the deposition, by any means, of materials in the waters of the state."