620 So.2d 1018 (1993)
Michael J. BALL, D.P.M., Seymour Z. Beiser, D.P.M., Jeffrey L. Breslaw, D.P.M., Martin J. Diamond, D.P.M., Peppy H. Eisenfeld, D.P.M., Brian D. Finke, D.P.M., Theodore R. Friedman, D.P.M., James A. Green, D.P.M., Sanford M. Green, D.P.M., Arthur Carl Haspel, D.P.M., Richard Hochman, D.P.M., Howard M. Imanuel, D.P.M., Lawrence J. Kales, D.P.M., Robert T. Kirschenbaum, D.P.M., Jeffrey L. Kravat, D.P.M., Frank L. Levy, D.P.M., Owen P. Macken, D.P.M., Stuart A. Marcus, D.P.M., John W. Mina, D.P.M., Ivan I. Prager, D.P.M., Barrett E. Sachs, D.P.M., Henry Sapenoff, D.P.M., Martin Shank, D.P.M., Warren L. Simmonds, D.P.M., Steven J. Sinert, D.P.M., Robert D. Siwicki, D.P.M., Robert D. Teitelbaum, D.P.M., Robert S. Wane, D.P.M., Sidney R. Weinberg, D.P.M., and Howard E. Zucker, D.P.M., Appellants/Cross Appellees,
v.
FLORIDA PODIATRIST TRUST, and Rogers-Atkins Insurance, Inc., Appellees/Cross Appellants.
No. 91-4001.
District Court of Appeal of Florida, First District.
May 7, 1993.
Rehearings Denied July 21, 1993.
*1019 Judy D. Shapiro, Miami, for appellants Ball, Beiser, Breslaw, Haspel, Imanuel, Kales, Kravat, Levy, Macken, Mina, Prager, Sachs, Sapenoff, Shank, Simmonds, Sinert, Wane and Zucker.
Donald G. Korman of Korman, Schorr & Wagenheim, Bruce Culpepper and Darren A. Schwartz of Haben, Culpepper, Dunbar & French, P.A., Tallahassee, for appellants Diamond, Eisenfeld, Finke, Friedman, J. Green, S. Green, Hochman, Kirschenbaum, Marcus, Siwicki, Teitelbaum, and Weinberg.
John Beranek, Harry O. Thomas, and Jeffrey L. Frehn of Aurell, Radey, Hinkle, Thomas & Beranek, Tallahassee, for appellees.
WOLF, Judge.
Appellants, who were plaintiffs in the trial court, seek relief from entry of a summary judgment which determined the issue of liability in favor of the appellees, who were the defendants in the trial court. Appellants are podiatrists and former policyholders in the Florida Podiatrist Medical Malpractice Insurance Trust (FPT), a self-insurance trust providing liability coverage to its policyholders. Appellees are FPT and its administrator Rogers-Atkins Insurance, Inc. Appellants assert on appeal that the trial court erred in holding that the trustees of the FPT could make distributions from the self-insurance trust and limit the distribution to those members who were paying premiums at the time the trustees determined to make the distribution.[1] We find nothing in Florida law or the trust documents presented to the trial court which would prohibit the trustees from exercising their discretion in this manner. The decision of the trial court is affirmed.
FPT is a self-insurance trust fund established in 1976 to provide medical malpractice insurance for its members. The trust was created by the Florida Podiatric Medical Association to provide an alternative to the commercial insurance market for the podiatrists of Florida. The governing documents of the trust are a trust agreement and an indemnity agreement. These documents were amended extensively in 1986, *1020 and all parties agreed in the trial court that the legal relationship among the parties at the time of the dispute was controlled by the 1986 amended versions.[2]
The trust was also governed by section 627.357, Florida Statutes (1991), and rules adopted by the Department of Insurance (department). The pertinent rule is section 39.005(2), Florida Administrative Code, which allowed the trust to issue dividends when approved by the department.
FPT is managed by a board of trustees composed of members. Each trustee is a current policyholder in the fund and is elected from certain geographic areas to implement the management responsibility. The trust agreement gives the trustees the "exclusive and absolute power, control and authority over the Fund ..." This authority includes, but is not limited to, the power
[T]o set premiums and other charges for service to the members ...
[T]o do all acts and things as in their sole judgment and discretion are necessary, incidental to, or desirable for the conducting and perpetuating the purposes of the fund ... [and]
[T]o promulgate rules and regulations governing membership and participation in the trust ... as the trustees may determine in the exercise of prudent business judgment will serve the best interests of the trust, the fund and the members thereof ...
The trust agreement requires the trustee-managers to prepare and make available to the members an annual report on FPT's operations disclosing the trust's "receipts, disbursements, earnings and the assets and conditions of the Fund."
The 1986 indemnity agreement also governs the rights and duties of FPT and its members. This indemnity agreement states in relevant part as follows:
The Members intend this agreement as a mutual covenant of assumption and not as a partnership.
* * * * * *
The Administrator shall deposit to the account of the Trustees ... all charges as and when collected, and said monies shall be disbursed only as provided by (1) the rules, regulations and by-laws of the Trustees, (2) the Agreement between the Trustees and the Administrator and (3) the Rules of the Department pertaining to self-insurers.
* * * * * *
Liability of the Trust to the Member is specifically limited to such obligations as are set forth in the latest revision of the insurance policy pertaining to the Members.
* * * * * *
Coverage by the Trust ... shall expire and be cancelled automatically for non-payment of premium, and a Member may be expelled and dropped from the Trust upon ten (10) days written notice by the Trustees ... to the Member stating when, no less than ten (10) days thereafter, cancellation shall be effective.
* * * * * *
Application for continuing membership, when approved in writing by the Trustees or their designee, shall constitute a continuing contract for each succeeding fiscal period unless cancelled by the Department or the Trust, or unless the Member shall have resigned or withdrawn from said Trust by written notice.
Each appellant had paid premiums and been a policyholder prior to September 1, 1989. All appellants had ceased making premium payments prior to that time.
FPT issued "claims made" insurance policies to members, meaning that FPT was only liable for malpractice claims or suits brought against the plaintiffs while their policies were in force. The policies incorporate *1021 the trust agreement and indemnity agreement and state that by accepting the policy, the insured agrees that the insurance policy embodies "all agreements" between the insured and FPT. Neither the insurance policy nor the documents incorporated therein purport to require the trustees to distribute to former policyholders surplus that accumulated while they were policyholders. The policy also provided for a limited right of assessment. An assessment cannot be made unless the reserves accumulated in the policy year and prior years are insufficient to pay claims, and an assessment can only be made to cover losses incurred in the year that the member was a policyholder.[3] Conversely, past policyholders may receive a benefit from premiums collected in the future in that these amounts may be utilized to cover deficiencies in past years.
On February 25, 1989, the trustees received a report that there was an actuarial surplus in the fund (excess dollars received as a result of premiums and investments that would not be needed to pay projected losses). The trustees voted at that meeting to "request authorization from the Florida Department of Insurance ... to distribute a dividend of $6 million, or such lesser amount as the Department may approve following negotiations." The department later indicated that they would not approve a full $6 million dividend.
On July 25, 1989, FPT's actuary rendered an opinion stating that financial data supported transferring $3 million from FPT's reserves to surplus and distributing this money as a dividend. Thereupon at their September 22, 1989, meeting, the trustees transferred $3 million from reserves to surplus and declared a $3 million dividend, subject only to the department's approval, which was later secured. This was the first dividend ever paid. At their September 22, 1990, meeting, the trustees declared a second dividend in the amount of $2 million which the department also approved.
The dividend distribution plans specified that the dividends were to be paid only to current policyholders. The trust's rationale for not paying appellants was stated in the minutes as follows:
The decision to exclude prior policyholders was based on the following considerations: first, there is no clear legal basis which would permit the transfer of FPT assets to prior policyholders, even if the Trustees thought such a transfer desirable; second, some former policyholders have ceased being such by [sic] even if some former policyholders were thought to be deserving of participation, a case-by-case analysis of all such former policyholders would be needed using criteria which no one was able to articulate; and fourth [sic], it is simply not customary to pay a dividend to a former policyholder, unless the dividend was declared prior to cancellation but paid afterwards.
Additionally, the trustees excluded former policyholders from participation in the dividends because they believed that paying dividends to former insureds would not benefit the trust.
The distribution of dividends to current policyholders was also done in part to encourage policyholders to remain with FPT, ensuring FPT's financial stability through the continued receipt of premiums.
Inquiries made to the Department of Insurance concerning the legality of the distribution formula adopted by FPT received the following responses:
As I understand it, your complaint is based on the fact that the Trust recently distributed a dividend to insured members of the Trust who were members on September 1, 1989, and that you and approximately 50 other prior members were not allowed to participate in the dividend distribution since you were not members on September 1, 1989.
After a review of the appropriate statute and rule, I find nothing that would limit the Trust's right to declare and distribute *1022 dividends to ACTIVE members of the Trust.
* * * * * *
After reviewing the circumstances surrounding the distribution, I find nothing that will indicate the Trust was not within its rights in making the distribution.
A subsequent department letter states in relevant part as follows:
The issue of whether a Trust such as the Florida Podiatrist Trust may actually pay a dividend is a solvency matter over which the Department holds jurisdiction pursuant to Rule 4-39.005 [now Rule 4-187.006], Florida Administrative Code. However, to whom such dividend is to be paid is a separate issue not within the realm of the Department's regulatory authority granted by statute.
Appellants' legal right to share in the distribution of dividends is controlled by their contract, the trust documents, applicable statutes, and administrative rules. There is no dispute as to the material facts, and the issue before us is limited to an interpretation of the legal effect of these documents.
A summary judgment is appropriate where the material facts are not in dispute and the judgment is based on the legal construction of documents. See Castle Constr. Co. v. Huttig Sash & Door Co., 425 So.2d 573, 575 (Fla. 2d DCA 1982).
It is well settled that where a determination of liability depends upon a written instrument and its legal effect, the question is essentially one of law and is ordinarily determinable by the entry of summary judgment. National Luggage Services, Inc. v. Reedy Forwarding Company, Inc., 339 So.2d 305 (Fla. 3d DCA 1976); Font v. Lazarus Homes Corporation, 339 So.2d 258 (Fla. 3d DCA 1976); accord Shafer & Miller v. Miami Heart Institute, Inc., 237 So.2d 310 (Fla. 3d DCA 1970) and Kochan v. American Fire and Casualty Company, 200 So.2d 213 (Fla. 2d DCA 1967).
Buckner v. Physicians Protective Trust Fund, 376 So.2d 461 (Fla. 3d DCA 1979).
The issue before us is simply a matter of law as to the construction of the contractual agreement between the parties, and whether these agreements preclude the trustees from distributing the actuarial surplus without including appellants.
No statute or rule limits the trustees' discretion by prescribing a set formula or method for distributing surpluses. The law under which FPT was created, section 627.357, Florida Statutes, does not address the payment of dividends, and according to the department, the only rule applicable to the dividend distribution, rule 4-187.006(2), regulates whether a trust such as FPT may pay a dividend, but not to whom the dividend must be paid, which "is a separate issue not within the realm of the Department's regulatory authority granted by statute."[4] The department thus determined that no statute or rule restricted "the Trust's right to declare and distribute dividends to active members of the Trust." The department's interpretation of its rules and operable statute is entitled to great deference. Citizens of State of Florida v. Wilson, 568 So.2d 1267, 1271 (Fla. 1990); Reedy Creek Improvement Dist. v. Department of Environmental Regulation, 486 So.2d 642, 648 (Fla. 1st DCA 1986).
The regulatory framework in this case contrasts with section 440.57(5), Florida Statutes, which explicitly requires the payment of dividends to former members of workers' compensation self-insurance funds. See also rule 38F-5.065(7) and (8), Fla. Admin. Code. Because the Legislature expressed a specific, mandatory requirement with respect to one type of self-insurance fund, but omitted a similar expression with respect to another type of self-insurance fund, we must presume that the Legislature did not intend to require the payment of dividends to former members of medical malpractice risk management trust *1023 funds. See 49 Fla.Jur.2d Statutes § 133 (1984).
In Steiner v. Physicians Protective Trust Fund, 388 So.2d 1064 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 779 (Fla. 1981), the court recognized that the obligations of a self-insurance trust fund to its members are limited to the insurance agreement between the parties.
The indemnity agreement states in relevant part as follows:
[N]o liability shall accrue to the Trust or its members for any claim on behalf of the suspended or expelled member occurring after the expiration of the period after notice has been given to him as above provided.
* * * * * *
Liability of the Trust to the Member is specifically limited to such obligations as are set forth in the latest revision of the insurance policy pertaining to the Members.
The insurance policy, which incorporates the indemnity agreement, further states that "this policy embodies all agreements existing between the Named Insured and the Trust or any of its agents relating to this insurance."
Nothing in the agreement gives the appellants the right to participate in this distribution. Allowing appellants to participate in dividend rights would in effect rewrite the insurance contract between the parties by usurping the discretionary authority of the trustees to distribute surplus in the manner they have determined is in the best interest of FPT and its members. Compelling FPT to pay dividends to former members when FPT has no such duty under the insurance contract would also be inconsistent with the indemnity agreement and insurance policy, both of which expressly limit the liability of FPT to former members.
As previously noted, the agreement gives the trustees broad discretion in taking actions consistent with the purposes of the trust. At oral argument, it was conceded by the parties that the trustees would have broad discretion to utilize surplus funds to subsidize premium discounts in order to encourage continued participation. The actions taken here are just an additional method of encouraging continued participation. Continued participation is consistent with the purposes of the trust in that it is necessary to assure, among other things, (1) a continuing alternative to the traditional unpredictable liability markets, (2) a large enough pool of policyholders to establish actuarial integrity, and (3) provide sufficient funds to assure against catastrophic loss in any one year. These are all valid reasons for the trustees to exercise their discretion as they did in determining how to distribute benefits.
Further, the trust and the insurance contract in this case resemble the obligations concerning a mutual insurance company. That is, policyholders who are also the insurers, being assessable for losses incurred during their membership. See § 627.357, Fla. Stat. The conclusion that the contract is similar to one of mutual insurance is consistent with the fact that FPT is taxed like a mutual insurance company with the expressed intention in the insurance contract to create "a mutual covenant of assumption." In Huber v. Martin, 127 Wis. 412, 105 N.W. 1031, 1039-1040 (1906), the court concluded that without a charter provision to the contrary, only current policyholders had a right to surplus distributed by the mutual insurance company, stating the following:
Every policy-holder knows, or ought to know, that he will remain a member so long as he remains a policy-holder and no longer. He knows, or ought to know, that as soon as his membership relation is established he becomes possessed of an equitable interest in the assets of the company consisting of all accumulations prior to his time, and such as may be added thereto during his membership, but which cannot be realized on in possession in the absence of a necessary distribution of the surplus on account of the company going out of business, or in some proper way. He knows, or ought to know, that it is entirely optional with him whether to preserve his interest in the company and thereby protect his contingent *1024 rights, or to allow them to lapse by ceasing to be a member. He also knows, or ought to know, that in the case of his interest so lapsing it will inure to the benefit of those associated with him who choose to retain their memberships and those who come after him, the doors of the company swinging freely to let in new members and to let old ones out according to choice.
The court in Zinn v. Germantown Farmers' Mut. Ins. Co., 132 Wis. 86, 111 N.W. 1107 (1907), reaffirmed the Huber decision, concluding that only those who held policies and were thus members when the mutual insurance company resolved to distribute surplus were entitled to a share of the surplus. As the court reasoned
[T]he rule has become settled as to stock corporations that a dividend belongs to those who own the stock when it is declared... . Complete analogy exists between rights of members in a mutual insurance company and stockholders in a stock company in and to such surplus... . Declaring a dividend is nothing but authoritatively deciding to distribute some or all of the surplus. We therefore think it entirely logical to apply the foregoing well established rule, and to hold that on March 19, 1906, $50,000 became separated from the corporate assets and became the property of the several members then existing... .[5]
Since FPT members are similarly situated to members of a mutual insurer, former members of FPT should not be given a greater right to dividends, equitable or otherwise, than former members of a mutual insurance company. Therefore, like a mutual insurer and because there is not a provision in the insurance contract to the contrary, only those who were policyholders on the date FPT declared dividends were entitled to a share of those dividends.
Absent evidence of a breach of the contractual agreement, or an abuse of discretion on the part of the trustees, the trial court was correct in granting a summary judgment in favor of the appellees.
ALLEN, J., concurs
SMITH, J., dissents with written opinion.
SMITH, Judge, dissenting.
I respectfully dissent from the majority's decision to affirm the summary judgment granted in favor of the Florida Podiatrist Trust (Trust) and Roger-Atkins Insurance, Inc.
The order of summary judgment contains no findings of fact or conclusions of law; it does not state the basis for the trial court's denial of the relief sought in the complaint. Rather, the order simply denies relief to appellants and grants relief to appellees. At the hearing on the cross-motions for summary judgment, the trial court again made no specific findings as to the matters raised in the complaint; rather, it stated only that it found the case to be a question regarding the scope and exercise of the Trustees' discretion, and the trial court found no abuse of that discretion had been shown. No evidence, however, was submitted at that hearing.
It is true that where a determination depends upon a written instrument and its legal effect, the matter is essentially a question of law and is ordinarily determinable by summary judgment. See, Buckner v. Physicians Protective Trust Fund, 376 So.2d 461 (Fla. 3d DCA 1979). However, the trial court did not expressly base its grant of summary judgment on a construction of the Trust instruments.
The 1986 "Amended and Restated Indemnity Agreement" contains a clause providing:
WHEREAS, the Department of Insurance of the State of Florida approved the establishment of the Trust upon the condition that its Members execute an agreement whereby such Members will jointly and severally covenant and agree there will be no disbursements out of said *1025 Fund by way of dividends or distribution of accumulated reserves to the respective members; ...
NOW, THEREFORE, for and in consideration... .
(Parenthetical omitted).
The amended indemnity agreement later states at clause 9H that the Trust administrator shall deposit "all charges as and when collected, and said monies shall be disbursed only as provided by (1) the rules, regulations and by-laws of the Trustees, (2) the Agreement between the Trustees and the Administrator [Rogers-Atkins Insurance, Inc.] and (3) Rules of the Department [of Insurance] pertaining to self-insurers." At still a later point in the 1986 Amended Indemnity Agreement, it is stated:
The Trustees are authorized to set aside a reasonable sum for the operating expenses or administrative expenses of the Trust and the Trust fund. All remaining funds coming into their hands during any one fiscal year of the Trust shall be set aside and shall be used only for payments for claims, including settlements, awards, judgments, legal fees, and costs in all contested cases.
(Emphasis added).
Appellees would have us ignore the above-quoted "WHEREAS" clause as simply a reference to a prior, superceded agreement. Yet, such is not apparent from the amended agreement in which the clause appears. Also, the last-quoted provision supports the inference that the Trustees lacked the authority to declare and distribute the dividends. The fact that appellants did not, in the trial court, formally challenge the Trustees' authority to declare a dividend does not obviate the fact that the agreements found to be controlling by the majority are ambiguous on the question of dividend distribution. An ambiguous contract presents an issue of fact making summary judgment improper. Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc., 513 So.2d 218 (Fla. 1st DCA 1987).
The majority states that the issue before this court is a question of law as to the construction of the contractual agreements between the parties and "whether these agreements preclude the trustees from distributing the actuarial surplus without including appellants." (Emphasis added). In view of the penultimate passage quoted above, which is also quoted by the majority,[6] I view the issue as not whether the Trustees were precluded from issuing a dividend, but whether they were authorized to issue a dividend, and if so authorized, whether the timing and manner in which they acted was within their authority as trustees, and in keeping with their fiduciary duties to participants in the self-insurance trust. After all, even a trustee who has been granted "absolute and uncontrolled discretion" is still required to administer a trust in a good faith manner. Hastings Potato Growers Association v. Pomar, 296 So.2d 55 (Fla. 1st DCA 1974); Mesler v. Holly, 318 So.2d 530 (Fla. 2d DCA 1975); Hoppe v. Hoppe, 370 So.2d 374 (Fla. 4th DCA 1978), cert. denied, 379 So.2d 206 (Fla. 1979). It is undisputed that no provision of the trust agreement, and no rule, regulation, by-law or statute specifically establishes the Trustees' authority to make disbursements as they did, and I believe it is premature to engage in an abuse of discretion analysis based upon a record devoid of evidence from which such a determination can lawfully be made.
The majority correctly notes that Rule 4.187.006(2) provides that "[i]f necessary and consistent with sound actuarial principles, the Fund may issue dividends or refunds to its members as approved by the Department [of Insurance.]" Nevertheless, parties may contract against a matter permitted by law, and such seems to have occurred in the instant case. In addition, the rule itself is of little or no significance here since it has not been demonstrated that the questioned distribution was "as approved" by the Department of Insurance.[7]
*1026 While it is tempting to resolve any doubts against the appellants for their failure to make a more forceful case on these points before the trial court,[8] any doubts are to be resolved against the movant for a summary judgment. This court has previously stated that "[a] summary judgment is appropriate only when `the facts are so crystallized that nothing remains but questions of law' and there is not the `slightest doubt' as to any issue of material fact." Aloff v. Neff-Harmon, Inc., 463 So.2d 291, 294 (Fla. 1st DCA 1984) (emphasis in original), citing Harris v. Lewis State Bank, 436 So.2d 338, 340 (Fla. 1st DCA 1983); see also, Williams v. Bevis, 509 So.2d 1304, 1306 (Fla. 1st DCA 1987). It is a bedrock principle of law that a trial court is not authorized to try or weigh facts in ruling on a motion for summary judgment. Jones v. Stoutenburgh, 91 So.2d 299 (Fla. 1956); Booth v. Mary Carter Paint Co., 182 So.2d 292 (Fla. 2d DCA 1966); State v. West, 262 So.2d 457 (Fla. 4th DCA 1972); Burroughs Corp. v. American Druggists' Insurance Co., 450 So.2d 540 (Fla. 2d DCA 1984).
The majority notes that the Trustees could have used the surplus to discount future premiums, and the trial court also seized upon this fact as justification for the distribution of dividends. I take the view, by contrast, that the Trustees' authority to discount future premiums underscores the inequity suffered by the appellants, for had the Trustees decided to offer reduced premiums in the future, under some fair and reasonable trust provision, rule or regulation of which the members were on notice, the appellants would have had the option of participating in a benefit which they, no doubt, helped to make possible. More to the point, the authority to set the premium rates simply does not authorize the distribution of a dividend, much less to disburse the substantial accumulations of this trust in a grossly unfair, arbitrary and discriminatory manner under the guise of a "dividend."
In conclusion, while I am of the opinion that it would be premature to find that appellants are entitled to the relief they ultimately seek, I am convinced that the record does not conclusively demonstrate that appellants are not entitled to any relief. Accordingly, I would reverse the summary judgment and remand for further proceedings.
NOTES
[1] At trial, all the appellants were represented by Mr. Bruce Culpepper. On appeal, while a number of appellants are still represented by Mr. Culpepper, a number of the appellants have retained Judy Shapiro as appellate counsel. Ms. Shapiro attempts to raise a number of issues on appeal which were not raised in the trial court. We decline to address these issues for the first time on appeal and only address the issue of the trustees' authority to limit distributions to policyholders that are presently paying premiums.
[2] Several appellants assert for the first time on appeal that since the 1976 documents were not presented to the trial court, summary judgment was precluded. We find this argument to be frivolous in light of the agreement between the parties in the trial court, and since there is no indication that the 1976 documents would legally control, or that they contain substantially different information concerning the resolution of the issue before the court.
[3] It is undisputed that in light of the number of claims that have been filed and the extent of coverage provided, the trust is fully reserved for the period that appellants were members.
[4] Rule 4-187.006(2), formerly rule 4-39.005(2), states in full that "[i]f necessary and consistent with sound actuarial principles, the Fund may issue dividends or refunds to its members as approved by the Department."
[5] The Florida Legislature has also determined that the law pertaining to stock corporations is apposite to mutual insurers. See § 628.041, Fla. Stat. ("[t]he applicable statutes of this state relating to the powers and procedures of domestic private corporations formed for profit shall apply to ... domestic mutual insurers" except where in conflict with ch. 628, Fla. Stat.).
[6] As noted, clause 9H of the 1986 Amended and Restated Indemnity Agreement provides that monies collected by the Trustees shall be disbursed only in accordance with the pertinent rules, regulations and agreements.
[7] As noted in the majority opinion, the department has indicated that its jurisdiction to approve dividends is regarded as an issue of solvency of the Trust, and the issue of to whom dividends are paid is not within the department's regulatory authority.
[8] Appellants did seek by their complaint a declaratory judgment determining "[a]ll legal and equitable rights and duties or other legal relationships between the parties with respect to all dividends or refunds... ."