671 So.2d 287 (1996)
SCHOLASTIC BOOK FAIRS, INC., GREAT AMERICAN DIVISION, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellee.
No. 95-1355.
District Court of Appeal of Florida, Fifth District.
April 12, 1996.
*288 Susan K. McKenna and Myrna L. Galligano of Garwood, McKenna & McKenna, P.A., Orlando, for Appellant.
John D. Maher, Tallahassee, for Appellee Unemployment Appeals Commission.
No Appearance for Appellee Dean E. Smith.
W. SHARP, Judge.
Scholastic Book Fairs appeals the final order of the State of Florida, Unemployment Appeals Commission, which affirmed the appeals referee's determination that Dean Smith, Scholastic's former employee, is entitled to receive unemployment compensation benefits, following the termination of his employment with Scholastic. Scholastic asserted that Smith was terminated for "misconduct connected with his work," and he was not entitled to any unemployment compensation.[1] The evidence at the hearing was in dispute on this issue, and thus we must affirm.
The principle of appellate law involved in this case is not so much the proper standard of review to be employed by the reviewing court, but the appellate directive that finders of fact are the only proper resolvers of disputed facts and arbiters of witnesses' credibility. In the context of an unemployment compensation claim proceeding, the factfinder is the appeals referee. The appellate court, as well as the Commission, must accept those findings unless they are not based on competent substantial evidence. Smith v. Krugman-Kadi, 547 So.2d 677 (Fla. 1st DCA 1989), rev. denied, 558 So.2d 20 (Fla.1990); Kacsir v. Unemployment Appeals Commission, 456 So.2d 528, 529 (Fla. 3d DCA 1984).
In this case, the employer's testimony consisted largely of Smith's supervisor's account of what others had told him. The supervisor did paint a picture of Smith as wrongfully trying to obtain a lap-top computer without his employer's knowledge or permission, and equally wrongfully offering to let the agent of another employee pad her expense account by adding in bills Smith had paid. This conduct would indeed constitute misconduct sufficient to bar Smith from recovering unemployment compensation.[2]
However, the record also includes Smith's testimony. When questioned about the expense *289 receipt, he admitted he had offered a receipt to an employee of one of Scholastic's computer vendors to include in her expense account, but explained he did so because she was kidding before-hand about her getting receipts, and he handed her a receipt just as a joke. "We were kidding around." No one refuted Smith's explanation that this conversation was made only in jest. He also testified that the employer had not discussed this incident with him at the time of the discharge. The employer testified to the contrary.
When asked about the laptop computer, he responded:
No sir. At the time that I talked to these people ... what I had basically stated was, would GE Capital Fleet Services supply a laptop computer? That was a question I had asked them. Could this unit be included in the rate? ... The unit would be for Scholastic use, not for personal use, and that was stressed. The discussion was not to be reviewed by [Barr], as it was not pertinent at that point because it was looking for an option of other things to do. Because Scholastic was not interested in buying a laptop, which would offer a lot more flexibility in my management of the fleet. The fleet tools require a unique type device, which I think [Barr] would agree with, and in all of this it was to be as an option, not as something that I wanted for me at all. It was to beif I couldn't get the computer upgrade, could this be done? The inclusion in the rate would be nothing different than what we would have done in the past.... nothing would have been done under cover, it was just I did not want [Barr] to get involved at that particular point in time because, without having all my facts together in a fact-finding session, I'm not willing to discuss it.
When specifically asked whether he had ever asked the vendor to provide him with a laptop and not discuss the situation with his employer, he responded, "No, sir."
In resolving these disputed factual issues, the appeals referee elected to believe Smith. The referee entered the following order:
The record showed that the claimant was discharged from employment. The discharge occurred because of the claimant allegedly attempting to purchase a computer without the employer's knowledge and telling a vendor to put a receipt on her expenses. The claimant admitted to having given a receipt to a vendor and telling her to put it on her expenses. However, the claimant's testimony goes unrefuted that he did it as a joke, based on the prior conversations the claimant and the vendor had been having. Additionally, the claimant's uncontroverted testimony clearly shows that he did not attempt to purchase a computer without the employer's knowledge. Rather, during the course of discussions concerning prices and services to be delivered for prices, the claimant inquired to whether the company could receive a laptop computer with the prices that were already negotiated. It is accepted that the claimant instructed the vendor not to discuss the situation with his employer. However, the record is devoid of any evidence to show that the claimant was attempting at that point to finalize a deal. Rather, he was only attempting to negotiate prices and what the company would receive for those prices. It was not [unreasonable] to assume that the employer would not want to be involved in the intimate details of the negotiation until the claimant had determined all of the aspects of the negotiation. While the employer may have made a wise decision to discharge the claimant, they failed to produce a preponderance of competent evidence necessary to show that the claimant's behavior rose to the level of misconduct.
Since these findings are supported by Smith's testimony at the hearing, and his testimony is "substantial and competent,"[3] *290 that has to be the end of our inquiry as an appellate court. Indeed, we may believe we would have resolved these disputed facts differently, or that the result is wrong, but it is simply not our function, nor have we the ability to redetermine veracity or the proper weight to give to testimony presented at a trial or a hearing. To reverse this case we would have to say that joking about padding an expense account in a social setting, and attempting to find out prices and options regarding the possible acquisition of a computer, within the ambit of an already negotiated deal, was such egregious misconduct on the part of the employee as to disqualify him from the right to unemployment compensation as defined by the statute. The Unemployment Appeals Commission that administers this statute held otherwise. We must give their interpretation of the statute deference.[4]
AFFIRMED.
HARRIS, J., concurs.
ANTOON, J., concurs specially with opinion.
ANTOON, Judge, concurring with opinion.
Something is wrong. While I agree that we must affirm the Florida Unemployment Appeals Commission's decision that Dean Smith is entitled to receive unemployment compensation benefits, I write to express my view that the result is unjust, and to suggest that perhaps a better standard of review is necessary other than whether the hearing officer's findings are supported by substantial competent evidence. See Florida Department of Agriculture v. Doss, 392 So.2d 990 (Fla. 5th DCA 1991).
It is abundantly clear from the record, including Smith's own testimony, that he engaged in misconduct related to his work. Essentially, the facts show that when his employer, Scholastic Book Fairs, Inc., Great American Division (Scholastic), refused to purchase an $8,000 laptop computer to replace Smith's desktop computer, he engaged in an effort to fraudulently acquire one. To this end, he approached a representative of G.E. Capital Fleet Services (Fleet), one of Scholastic's vendors, and asked her to provide him a laptop and to hide the cost in the overall bill to Scholastic. Smith then asked the Fleet representative not to disclose his request to Smith's supervisor.
At about the same time Smith approached the Fleet representative regarding the laptop computer, the two of them, along with the representative of another vendor, went to a restaurant for drinks after work. Smith offered to pay. When the bill was delivered, he paid but then suggested to the Fleet representative that she take the receipt and also make a claim for reimbursement. She reported both of these instances to Smith's supervisor. Because of these facts, Scholastic terminated Smith's employment.
At the hearing, Smith essentially admitted to the allegations but offered self-serving statements that he never intended to acquire the computer; he said he was only gathering information. He explained that his suggestion that the Fleet representative claim the cost of the drinks on her expense account was a "joke." The hearing officer, apparently rejecting the testimony of the Fleet employee which had been offered by letter and the fact that she took Smith's statements seriously enough to report them to his employer, found that Smith's conduct did not constitute misconduct under section 443.101, Florida Statutes (1993).
The Unemployment Appeals Commission and this court are bound by the referee's findings so long as there is substantial competent evidence in the record to support the findings. Kacsir v. Unemployment Appeals Commission, 456 So.2d 528, 529 (Fla. 3d *291 DCA 1984). The hearing officer in the instant case obviously relied on the self-serving statements of Smith, notwithstanding compelling evidence to the contrary. In light of the totality of the circumstances of this case, it was unreasonable for the hearing officer to have rejected all other evidence in favor of Smith's statement that he did not mean what he said. Moreover, whether he meant what he said or not, his statements were adverse to the interests of Scholastic.
I understand Scholastic's dismay with the result in this case. After discovery of Smith's conduct, which at best was evidence of disloyalty, Scholastic terminated his employment. By this termination, Scholastic was taking the only reasonable action available to protect its' assets and reputation. It is ironic that taking this protective action led to Scholastic being punished. Under any other standard of review, the result would have been different.
NOTES
[1] Section 443.101(1)(a) of Florida's unemployment compensation law provides that unemployment compensation benefits may not be paid if an employee is discharged for "misconduct." See § 443.101, Fla.Stat. (1993). Section 443.036 defines misconduct as (a) conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employees; or (b) carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
[2] §§ 443.101, 443.036(26), Fla.Stat. (1993) ("conduct evincing such willful or wanton disregard of standards of behavior which the employer has the right to expect of his employees ...").
[3] The term "competent substantial evidence" does not relate to the quality, character, convincing power, probative value or weight of the evidence but refers to the existence of some evidence (quantity) as to each essential element and as to the legality and admissibility of that evidence. "Competency of evidence" refers to its admissibility under legal rules of evidence. "Substantial" requires that there be some (more than a mere iota or scintilla), real, material, pertinent, and relevant evidence (as distinguished from ethereal, metaphysical, speculative or merely theoretical evidence or hypothetical possibilities) having definite probative value (that is, "tending to prove") as to each essential element of the offense charged. Dunn v. State, 454 So.2d 641, 649 n. 11 (Fla. 5th DCA 1984) (Cowart, J., concurring).
[4] PERC v. Dade County Police Benevolent Assoc., 467 So.2d 987 (Fla. 1985); Ball v. Florida Podiatrist Trust, 620 So.2d 1018 (Fla. 1st DCA 1993); Couch v. Comm. on Ethics, 617 So.2d 1119 (Fla. 5th DCA 1993); Little Munyon Island, Inc. v. Department of Environmental Regulation, 492 So.2d 735, 737 (Fla. 1st DCA 1986).